IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHAD EVERETTE THOMPSON                                                         PLAINTIFF

      v.                        Civil No. 4:07-cv-04012

LT. FRANKIE McJUNKINS;
ROBERT GENTRY; BRAD
ABBOTT; DETECTIVE
JIMMY COURTNEY; TOM
FISHER; OFFICER DALE
DORPLE; and NURSE LORI JONES                                                 DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Shad Everette Thompson (hereinafter Thompson ) filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Separate Defendant Robert Gentry (hereinafter Gentry ) filed a Motion to Dismiss (Doc. 11). To assist Thompson in responding to the Motion, a questionnaire was propounded (Doc. 25). Thompson responded to the questionnaire (Doc. 30)(hereinafter *Resp.*). The Motion is now before the undersigned for issuance of this report and recommendation.

### I. Background

According to the allegations of the Complaint, at about 4:00 p.m. on October 23, 2006, Thompson was standing outside his residence when law enforcement officers with the Hempstead County Sheriff's Department, the Hope Police Department, the Federal Drug Enforcement Administration, and the South Central Drug Task Force arrived. The law enforcement officers stated they were there to execute an arrest warrant on him. *Complaint* at page 4-5. Thompson ran to the

back of his house. *Id.* at page 5. Lt. McJunkins, with the Hempstead County Sheriff's Department, yelled for Thompson to stop. *Id.* At that point, Thompson states he stopped because he saw two other officers Jimmy Courtney, with the Hope Police Department, and Tom Fisher, with the Drug Enforcement Administration, running towards him. *Id.* Thompson alleges he got down on his knees at that point. *Id.* Two sets of handcuffs were placed on Thompson–one set on his wrists and one set on his ankles. *Id.* He was carried from the front of his house and placed "in behind one of the trucks." *Id.* Thompson indicates he was questioned about drugs. *Id.*

When Thompson denied any knowledge about drugs, he alleges Fisher became hostile grabbed him by the neck and pushed his head into the bed of the truck. *Complaint* at page 5. As a result, Thompson states three of his front teeth were chipped off and his bottom lip was badly cut. *Id.* When he was pushed down by Fisher, Thompson states this caused him to kick Officer Brad Abbott, South Central Drug Task Force.[1] *Id.* Thompson indicates Abbott had been directed to watch him and to hold onto his cuffs. *Id.*

Thompson then yelled for his Mother. *Complaint* at page 5. When she came, he told her the officers were abusing him and to get the teeth for evidence. *Id.* Thompson states the officers would not let her get the teeth and instead pulled a gun on her. *Id.* He alleges the officers then picked him up by the cuffs causing the cuffs to cut into his wrists which made him yell louder causing spit to come out of his mouth and land on Officer Dale Van Dorple, Drug Enforcement Administration. *Id.* Once the spit hit Dorple, Thompson contends Dorple kicked him in his right side three times. *Id.*

---

[1] It appears Brad Abbott is a Task Force Officer with the Drug Enforcement Administration. *See Motion to Dismiss* filed by Brad Abbott (Doc. 40).

Thompson was then taken to the Hempstead County Detention Facility (HCDF) by Officer Watson. *Complaint* at page 6. When being booked in, Thompson requested medical attention. *Id.* He indicates his mouth was bleeding but no one would help him get medical attention. *Id.*

Thompson alleges that after he requested medical attention, Lori Jones, the nurse at the HCDF, stated his mouth was not her problem and that he needed a dentist. *Complaint* at page 6. Thompson alleges Jones said there was nothing she could do about his situation. *Id.* He also states Jones would not give him anything for the bleeding or the pain. *Id.*

As relief, Thompson requests that he be reimbursed for "the money [he] spent to get [his] teeth fixed." *Complaint* at page 4. Thompson indicates the dental work cost $1,670. *Addendum* (Doc. 6) at ¶ 8(E).

Because Thompson's complaint did not mention any actions taken by certain defendants, he was asked to file an addendum to his complaint. With respect to Gentry, Thompson does not contend Gentry used excessive force against him. *Addendum* (Doc. 6) at ¶ 6. Thompson was asked to explain how he believed Gentry violated his federal constitutional rights. Thompson responded: "Officer Gentry, he was a part of my arrest, and he could have made sure I received medical attention. He knew the condition of my teeth and bottom lip." *Id.*

In response to the motion to dismiss, Thompson indicates his arrest occurred at around 4:30 p.m. *Response* (Doc. 30) at ¶ 1. He was booked into the HCDF at about 5:30 p.m. *Id.* at ¶ 2. Gentry did not personally transport him to the HCDF. *Id.* at ¶ 4. However, Gentry was apparently at the HCDF. *Response* (Doc. 30) at ¶ 5. Thompson states: "Officer Gentry responded to myself by saying he would get me medical care, but locked me in a cell and never got me any kind of medical treatment." *Id.*

Thompson indicates Jones or other medical personnel made all decisions regarding his medical care while he was at the HCDC. *Response* (Doc. 30) at ¶ 6. Thompson states Gentry made no decisions regarding his medical care or treatment. *Id.* at ¶ 7.

## II. Applicable Standard

Although Defendant phrases his entire motion as one under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, sovereign immunity is a jurisdictional doctrine and should be procedurally presented as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See e.g., Brown v. United States*, 151 F.3d 800, 803 (8th Cir. 1998). The remaining arguments are properly presented under Rule 12(b)(6). *See e.g., Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)(Qualified immunity is an affirmative defense and will be upheld on a Rule 12(b)(6) motion only when the immunity is established on the face of the complaint).

In considering a motion to dismiss for failure to state a claim, we must construe the complaint liberally in favor of the plaintiff and accept the allegations of the complaint as true. *See Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000). Nevertheless, in treating the factual allegations of the complaint as true pursuant to Rule 12(b)(6), the court "do[es] not ... blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)(citations omitted). A complaint should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of fact in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

**III. The Arguments of the Parties**

As a state official, Gentry first contends he is entitled to sovereign immunity in his official capacity. Next, Gentry contends Thompson can present no set of facts demonstrating that he violated Thompson's constitutional rights. Gentry asserts he used no excessive force against Thompson. Moreover, Gentry points out he was merely involved in Thompson's arrest and did not work at, or supervise the medical staff at, the HCDF. Alternatively, Gentry contends he is entitled to qualified immunity in his individual capacity.

Thompson does not contend Gentry used excessive force against him. However, Thompson does contend Gentry was deliberately indifferent to his serious medical needs when Gentry failed to make sure Thompson got medical care despite the fact that he was bleeding from the mouth and obviously injured when he was arrested. Thompson maintains Gentry told him he would get Thompson medical care but then just locked him in a cell and did nothing.

**IV. Discussion**

I first address Gentry's claim that he is entitled to sovereign immunity. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).

As noted above, Gentry is a member of the South Central Drug Task Force. A task force is a multi-jurisdictional association consisting of a minimum of two law enforcement agencies and one prosecuting attorney investigating and prosecuting drug crimes in a given geographic or judicial district. Ark. Code Ann. § 12-17-101(5). The Arkansas Department of Finance and Administration

administers all grant awards and expenditures of drug task forces. Ark. Code Ann. § 12-17-103(b). Members of the South Central Arkansas Drug Task Force have been found to be "state employees." *See e.g., South Central Arkansas Drug Task Force v. Ray*, 56 Ark. App. 30, 937 S. W. 2d 682 (1997).

The South Central Task Force's funds are handled by the state through the state treasury, the task force is operated pursuant to state statute, with officers certified by the state, and its employees have been found to be state employees. Sovereign immunity therefore bars Thompson's claims against Gentry in his official capacity. *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)(Neither the State nor its officials acting in their official capacities are "persons" capable of being sued under § 1983.).

I next turn to Gentry's argument that Thompson has failed to state a denial of medical care claim against him. To state a claim under § 1983, Thompson must establish that Gentry acted under color of state law and that Gentry deprived him of a constitutional or federal right. *See e.g., Watertown Equipment Co. v. Norwest Bank of Watertown*, 830 F.2d 1487, 1489 (8th Cir. 1987). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

Thompson was arrested at approximately 4:30 p.m. *Response* at ¶ 1. He was booked in at 5:30 p.m. *Id.* at ¶ 2. Gentry was not the officer who transported Thompson from the scene of the arrest to the HCDF. *Id.* at ¶ 4. Gentry did not work for the HCDF and was not personally involved in making any decisions regarding Thompson's medical care or treatment. *Response* at ¶ 7. All decisions regarding Thompson's medical care while he was at the HCDF were made by Nurse Lori Jones or other medical personnel. *Id.* at ¶ 6.

"[I]f any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Thompson's] medical care." *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992). An individual who has no involvement in the treatment decisions made by the medical services personnel at the detention facility cannot be held liable. *See Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994). There is simply no basis on which Gentry can be held liable in his individual capacity for the treatment decisions made by medical personnel at the HCDF.

### V.  Conclusion

I therefore recommend that the motion to dismiss filed by Separate Defendant Robert Gentry (Doc. 11) be granted and all claims against him be dismissed.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of October 2007.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE