IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHAD EVERETTE THOMPSON                                          PLAINTIFF

        v.                      Civil No. 4:07-cv-04012

LT. FRANKIE McJUNKINS;
BRAD ABBOTT; DETECTIVE
JIMMY COURTNEY; TOM
FISHER; OFFICER DALE
DORPLE; and NURSE LORI JONES                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Shad Everette Thompson (hereinafter Thompson) filed this civil rights action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).[1] He proceeds *pro se* and *in forma pauperis*.

Motions to dismiss or alternative motions for summary judgment were filed on behalf of Separate Defendant Tom Fisher (Doc. 38), Separate Defendant Brad Abbott (Doc. 40),[2] and Separate Defendant Dale Van Dorple (Doc. 42).[3] To assist Thompson in responding to the Motions, a questionnaire was propounded (Doc. 45). Thompson responded to the questionnaire (Doc. 47)(hereinafter *Resp.*). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the

---

[1]I have a duty to liberally construe *pro se* complaints. Although Thompson does not specifically mention *Bivens*, section 1983, does not by its terms provide a remedy against federal officials. Instead, a *Bivens* claim must be brought by those asserting constitutional violations by federal officials. The elements of a *Bivens* claim are: (1) that a defendant acted under color of federal law; (2) to deprive a plaintiff of a constitutional right. *See e.g., Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

[2]Separate Defendant Brad Abbott filed a supplemental brief on July 8, 2008 (Doc. 51).

[3]As matters outside the pleadings were presented to the court and have been considered, the court will apply the standard applicable to motions for summary judgment.

-1-

Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

## I.  Background

Tom Fisher is a Special Agent of the Drug Enforcement Administration (DEA).  *Resp.* at ¶ 2.  Dale Van Dorple is a Special Agent of the DEA.  *Id.* at ¶ 3.  Brad Abbott is a Task Force Officer with the DEA.  *Id.* at ¶ 4.

On October 23, 2006, members of the DEA, the Hope Police Department, the Hempstead County Sheriff's Office, and the South Central Drug Task Force, were in the process of executing state arrest warrants for several individuals for the delivery of methamphetamine.  *Resp.* at ¶ 5.  One of those individuals, Alan Cox, had been under surveillance and was followed to Thompson's residence which resulted in officers discovering him at that location.  *Id.* at ¶ 6.  There was an outstanding arrest warrant for Thompson and officers decided to arrest both him and Cox at the same time.  *Id.* at ¶ 7.

When Fisher and the other officers approached Thompson's residence, he and Cox were standing in front of the house.  *Resp.* at ¶ 8.  As the officers got out of their cars wearing police identification, Thompson began to flee ignoring all commands to stop.  *Id.* at ¶ 9.

According to the affidavit of Fisher, he and Jimmy Courtney, a local officer, pursued Thompson about 100 yards into a field.  *Affidavit of Tom Fisher* at page 2.  Fisher asserts that Thompson was running and he and Courtney had to tackle Thompson.  *Id.*  Fisher maintains Thompson was highly agitated, resistant, and appeared to be under the influence of methamphetamine.  *Id.*

According to Thompson, he only ran to the back of his house which was no more than fifteen yards.  *Resp.* at ¶ 10.  Thompson states he then dropped to his knees when he saw Fisher and

Courtney running towards him. *Id.* at ¶ 11. At that point, he was searched by Courtney and Fisher and handcuffed. *Id.* at ¶ 15.

Van Dorple was not involved in the chase but responded to the back of a DEA vehicle, a pick-up truck, where Thompson was struggling with officers. *Resp.* at ¶ 14. Thompson was rolling from side to side. However, Thompson maintains this was because he had been pushed to the ground by Van Dorple and was kicked by him three times in the side. *Id.* at ¶ 16.

According to Fisher, Thompson kicked an officer in the groin using the heel of his foot. *Affidavit of Fisher* at page 2. Fisher also asserts that Thompson repeatedly scratched an officer's right hand with his fingernail causing approximately eighteen small abrasions. *Id. See also Affidavit of Van Dorple* at page 2.

During the struggle, Thompson struck his mouth against the truck bed. *Affidavit of Fisher* at page 2. Thompson maintains Fisher caused him to do this because he pushed Thompson's face into the bed of the truck. *Resp.* at ¶ 19. According to Fisher and Van Dorple, eventually, Thompson had to be restrained with leg irons because he continued to resist arrest and behave in an agitated manner. *Affidavit of Fisher* at page 2; *Affidavit of Van Dorple* at page 2. Thompson, however, contends he was placed in leg irons behind his house and carried to the truck. *Resp.* at ¶ 21.

Thompson maintains Fisher used excessive physical force against him. *Resp.* at ¶ 24. Specifically, he contends Fisher caused three of his front teeth to break off and his bottom lip to be cut badly when he grabbed him by the neck and pushed his face into the bed of the truck. *Id.* at ¶ 19 & ¶ 24.

Abbott was holding onto Thompson's handcuffs when Thompson kicked him. *Resp.* at ¶ 25. Thompson does not contend Abbott used excessive force against him. *Id.* at ¶ 26.

Thompson spit on Van Dorple.  *Resp.* at ¶ 31.  Thompson contends Van Dorple used excessive physical force against him.  *Id.* at ¶ 33.  Specifically, Thompson contends Van Dorple kicked Thompson in the right side three times.  *Id.* at ¶ 32.

Because Thompson was arrested pursuant to a state warrant, federal officers turned him over to the Hempstead County Sheriff's Office while still at the location of his arrest.  *Resp.* at ¶ 22. Thompson was booked into the Hempstead County Detention Facility (HCDF) within an hour of his arrest.  *Id.* at ¶ 37.  He was charged with possession of a controlled substance, resisting arrest, battery in the second degree, possession of drug paraphernalia, and fleeing.  *Addendum* (Doc. 6) at ¶ 2.

Thompson contends he requested medical treatment as soon as Fisher caused his teeth to be broken off.  *Resp.* at ¶ 38.  All decisions regarding Thompson's medical care while he was at the HCDF were made by Nurse Lori Jones or other medical personnel.  *Id.* at ¶ 42.

Fisher made no decisions regarding Thompson's medical care or treatment.  *Resp.* at ¶ 43. Van Dorple made no decisions regarding Thompson's medical care or treatment.  *Id.* at ¶ 44.  Abbott made no decisions regarding Thompson's medical care or treatment.  *Id.* at ¶ 45.  Nevertheless, Thompson contends they could have made sure he received medical care since Fisher and Van Dorple were responsible for his injuries.  *Id.* at ¶¶ 46-48.

Thompson requested medical treatment as soon as he arrived at the HCDF at approximately 5:00 p.m.  *Resp.* at ¶ 50.  He was first seen by Nurse Jones at approximately 5:30 p.m.  *Id.*  He did not receive any treatment.  *Id.*  He maintains he was only able to eat certain foods.  *Id.*  When he would eat or drink certain foods, Thompson states it would cause sharp pain in his teeth.  *Id.* Thompson indicates it took about two weeks for his bottom lip to heal and his teeth hurt until his family got them fixed.  *Id.*

-4-

Prior to filing the lawsuit, Thompson did not file a claim under the Federal Tort Claims Act. *Resp*. at ¶ 1. As no claim was filed, Defendants have treated the complaint as only asserting individual capacity claims against them.

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  The Arguments of the Parties

Fisher and Van Dorple contend they are entitled to judgment in their favor on both the excessive force and the deliberate indifference to a serious medical need claims. With respect to the excessive force claim, they contend only a reasonable amount of force was used to control Thompson who was resisting arrest. They argue they have articulated facts that show the force applied was

objectively reasonable in light of the facts and circumstances confronting them.  They therefore contend they are entitled to qualified immunity.  Abbott maintains he did not use any force against Thompson and there is no basis on which he can be held liable.

With respect to the medical needs claim, Defendants maintain Thompson did not have a serious medical need that required immediate attention.  Defendants point out Thompson was turned over to the custody and control of the Hempstead County Sheriff's Department at the scene of the arrest.         Thompson argues Fisher used excessive force against him when Fisher grabbed him by the neck and pushed his face into the bed of the pick-up truck causing three teeth to break off and a cut on his bottom lip.  *Resp.* at ¶ 19 & ¶ 24.  Thompson maintains Van Dorple used excessive force against him when he kicked Thompson in the right side three times causing his ribs to become badly bruised.  *Id.* at ¶ 32 & ¶ 33.  Thompson does not contend Abbott used excessive force against him.  *Id.* at ¶ 26.

Thompson does not contend Fisher, Van Dorple, or Abbott were responsible for any of the decisions regarding his medical care or treatment.  However, he contends all three were deliberately indifferent to his serious medical needs when they failed to make sure he got medical care despite the fact that he was bleeding from the mouth and obviously injured when he was arrested.

## **IV.  Discussion**

As noted above, Thompson asserts two separate claims against these Defendants.  I will address the claims separately.

### ***The Excessive Force Claim***

To determine whether the Defendants are entitled to qualified immunity, the Court should utilize a two-part analysis.  *See e.g., Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006).  First, we determine "whether, viewing the facts in the light most favorable to [Thompson],

the officers' conduct violated a constitutional right." *Id.* Second, "[i]f a constitutional right has been

violated, we must then determine if such right was clearly established. This second step is a 'fact-

intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad

general proposition.'" *Id.* (citations omitted).

"The right to be free from excessive force is a clearly established right under the Fourth

Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d

747, 750 (8th Cir. 1998). "An officer is entitled to qualified immunity when the force is 'objectively

reasonable in light of the facts and circumstances confronting' the officer." *Mann v. Yarnell*, 497

F.3d 822, 825 (8th Cir. 2007). "Once the predicate facts are established, the reasonableness of the

official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628,

632 (8th Cir. 2001).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the

Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake."

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In analyzing Fourth

Amendment excessive force claims, the court applies a reasonableness standard. This standard was

discussed by the Eighth Circuit in *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006).

In *Samuelson*, the court noted:

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right
> to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Terry
> v. Ohio,* 392 U.S. 1, 22-27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). To determine
> if the officers used excessive force, we pay "careful attention to the facts and
> circumstances of each particular case, including the severity of the crime at issue,
> whether the suspect poses an immediate threat to the safety of the officers or others,
> and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*
> (quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L. Ed. 2d 1
> (1985)). Reasonableness is determined from the perspective of a "reasonable officer

on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted). Additionally, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396, 109 S. Ct. 1865 (internal quotations and citations omitted). Furthermore, our inquiry is an objective one, "without regard to [the officers'] underlying intent or motivation." *Id.* at 397, 109 S. Ct. 1865 (citations omitted).

*Samuelson,* 455 F.3d at 875 -876.

The facts, viewed in the light most favorable to Thompson, demonstrate he fled from the police ignoring all commands to stop. *Resp.* at ¶ 9. Once apprehended, Thompson was taken to the back of a pick-up truck. He was agitated, repeatedly scratched one officer's hand, kicked Abbott, and spit on Van Dorple. *Id.* at ¶ 20, ¶ 25, ¶ 31; *Affidavit of Tom Fisher* at page 2; *Affidavit of Van Dorple* at page 2. According to Thompson, Fisher grabbed him by the neck and pushed his head into the bed of the truck chipping or breaking three of Thompson's front teeth and cutting his bottom lip. *Resp.* at ¶ 19. Thompson also maintains Van Dorple kicked him three times in the side which is what caused him to roll around and kick from side to side. *Resp.* at ¶ 16 & ¶ 32. Thompson does not contend Abbott used excessive force against him. *Resp.* at ¶ 26.

Given Thompson's actions, some use of force to control and restrain him was reasonable. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)("a de minimus level of force or injury is insufficient to support a finding of a constitutional violation"). Moreover, Thompson's injuries were relatively minor, three chipped or broken teeth, a cut lip, and some bruises on his side. These injuries are as easily attributable to his own actions as to those of Fisher or Van Dorple. *See Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006)(noting de minimus injuries include "minor scrapes and bruises and less-than-permanent aggravation" of a prior injury). I conclude Fisher and Van Dorple are entitled to summary judgment because the force used was objectively reasonable in light of the facts and circumstances confronting them. With respect to Abbott, Thompson makes no

argument Abbott used excessive force against him.  Abbott therefore is entitled to summary judgment in his favor on this claim.

### *The Denial of Medical Care Claim*

I next turn to Defendants' arguments that Thompson has failed to state a denial of medical care claim against them.  I agree.

In order for Defendants to be liable for denial of immediate medical treatment, Thompson must demonstrate deliberate indifference to a serious medical need.  *See e.g., Hartsfield v.* Colburn, 491 F.3d 394, 397 (8th Cir. 2007)("Deliberate indifference is the equivalent to the criminal law standard of recklessness–a [Defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)(serious medical need is one diagnosed as requiring treatment, or one so obvious that even a lay person would recognize necessity for doctor's attention).  In this case, there is no indication that Thompson suffered any harm because he did not receive immediate medical care at the location of his arrest.

Thompson was arrested pursuant to a state warrant and turned over by the Defendants at the scene of the arrest to the Hempstead County Sheriff's Office.  *Resp.* at ¶ 22.  He was booked into the Hempstead County Detention Facility (HCDF) within an hour of his arrest.  *Resp.* at ¶ 37.  He was seen by Nurse Jones within a half hour of his arrival at the detention center.  *Id.* at ¶ 50.  All decisions regarding Thompson's medical care while he was at the HCDF were made by Nurse Lori Jones or other medical personnel.  *Id.* at ¶ 42.  Neither Fisher, Van Dorple, nor Abbott were involved in making any decisions regarding his medical care.  *Id.* at ¶¶ 43-45. Furthermore, Thompson has presented no medical evidence suggesting any delay in his obtaining medical care was detrimental to his health.  *See e.g., Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(when inmate alleges

that delay in treatment rises to level of Eighth Amendment violation, objective seriousness of deprivation should be measured by reference to effect of delay, and to establish effect inmate must place verifying medical evidence in record), *cert. denied*, ___ U.S. ___, 127 S. Ct. 297, 166 L. Ed. 2d 225 (2006).

### V.  Conclusion

I therefore recommend that the Defendants' motions to dismiss or alternative motions for summary judgment (Doc. 38, Doc. 40, Doc. 42) should be granted.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of July, 2008.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE